[Civ. No. 16648.   Second Dist., Div. Three.   June 2, 1949.]

SANFORD NOVACK, a Minor, etc., Appellant, v. LOS ANGELES SCHOOL DISTRICT OF LOS ANGELES COUNTY et al., Respondents.

Harry J. Miller and Richard A. Lavine for Appellant.

W. I. Gilbert and Henry E. Kappler for Respondents.

WOOD, J.—Action by Sanford Novack, a minor, by his guardians *ad litem,* for damages for personal injuries sustained by him on the playground of a public school. At the close of plaintiff's case, in a trial by jury, defendants' motion for a nonsuit was granted.  Plaintiff appeals from the order and judgment of nonsuit.

The accident occurred on Sunday afternoon, September 22, 1946, at the Sheridan Street Grammar School in Los Angeles. The playground of the school was enclosed by a fence about 10 feet high which was constructed of steel wire mesh and iron posts. South of the playground, and adjoining it,

there was a school garden which was also enclosed by a fence. The south fence of the playground separated the playground from the garden, and the fence along the other three sides of the garden was 5 feet high and constructed of wire mesh and wooden posts. There were several gates in the playground fence. There was a gate in the garden fence, and a gate in the fence between the playground and the garden. On the day of the accident, about 4 p. m., Sanford's uncle went to the playground to get him. He found Sanford, who was 6 years of age, lying on the playground with a long cut in his scalp, and his right leg under an overturned wooden box. The box, which was used to store athletic equipment, was empty at the time of the accident, was about 6½ feet high, 4 feet in width, 4 feet in depth, and weighed about 200 pounds. The box, when in its normal position, stood upright and rested on three "2 by 4" pieces of lumber which were attached to the bottom of the box—the 4-inch surfaces of those pieces being on the ground. Two doors, on the front side of the box, extended from the bottom of the box to within a few inches of its top, and they opened from the center outward. The roof of the box extended about 4 inches beyond the sides and was covered with sheet metal which was "turned over" the edges. The box had been on the playground about 10 years, and for a period of 5 or 6 years it had been located on the playground close to the south fence (the fence between the playground and the garden) and about 15 feet west of the gate in that fence. The ground where the box was located sloped slightly toward the center of the playground, but the slope was imperceptible.

When plaintiff's uncle went to the playground he entered the garden through the outside garden gate, which was bent over or "down to about a 30 degree angle," and then he entered the playground through an open gate between the playground and the garden. There were a few children on the playground at that time. The uncle did not remove the box which was on plaintiff's leg, but he returned to the home of plaintiff's parents and notified them of the accident. The father then went to the playground, and entered it by climbing over the garden fence and then going through the open gate between the playground and the garden. He tried to move the box which was on the boy's leg, but he was unable to do so without the assistance of others.

Three high school pupils, who had attended the grammar school referred to herein, testified that they continued to

play on the grounds of this school after entering high school, and that they played there on Sundays. One of those pupils testified that during the summer there was not much to do on the playground so they pushed the box over (referring to other occasions); that he had seen the box in every position except in the position of standing on its roof; that he had watched baseball games while sitting on the box when it was lying on the ground; that on Sundays they got into the playground by climbing over the fence or crawling through a hole under the fence; and that on some occasions he did not check the gates to see if they were locked. Another pupil testified that there were a few children around the box when (on other occasions) he saw it lying down; that when the playground was closed the gates were locked; that when he went there on Saturdays and Sundays he found the gates locked and he entered the playground by going over or under the fence. The other pupil testified that he had seen children playing around the box when (on other occasions) it was lying on the ground, and that he believed the gates were locked except during school hours and playground hours.

There was evidence that the principal of the school knew there was a hole under the playground fence, and that she knew that children were on the playground on Saturdays and Sundays. She testified that the gates were closed after playground hours; that the playground was not open on Sundays and the gates were locked on that day so far as she knew; and that the hole under the fence had been filled in many times, and the children reopened it. The custodian of the ground testified that prior to the accident he had seen holes under the playground fence.

■ Appellant contends that all the elements of liability required by Deering's General Laws, 1937, Act 5619, section 2 (Stats. 1923, ch. 328, p. 675—making school districts liable for negligence in certain instances), were established sufficiently to justify the denial of the motion for a nonsuit. Under section 2 of that act a school district is liable for injuries resulting from the dangerous or defective condition of grounds and property where the governing board of such school district, or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition and failed for a reasonable time after acquiring such knowledge or receiving notice to remedy such condition.

There was no evidence as to how the accident happened. There was evidence that at various times prior to the acci-

dent the box was pushed over by boys. There was no evidence that the box was unstable or wobbly in its upright position on the playground at the place where the accident occurred or at any place thereon, or that it had ever fallen except when it was pushed over. The box weighed about 200 pounds and there was no evidence from which it could be inferred that the 6-year-old plaintiff could, or did, push or pull the box over. There was no evidence that he pushed or pulled the box, or that he had done anything at all to it. There was no evidence from which it could be inferred that the box fell by reason of weather conditions, or that it toppled over by reason of any instability of, or structural defect in, the box itself. The doctrine of res ipsa loquitur is not applicable here. The box was not under the exclusive control of the defendants or either of them at the time of the accident. No representative of either defendant was on the school grounds on Sunday, the day of the accident herein, and it was not required or intended that such a representative should be there on that day. Customarily the grounds were closed on Sundays and the gates were locked. The grounds were closed on Sunday, the day of the accident, and there was no evidence that the gates were not closed and locked on that day prior to the accident. When plaintiff's uncle arrived at the playground after the accident, children other than the plaintiff were there. The evidence was insufficient as a matter of law to support a finding that the box was a dangerous or defective condition. Of course, it is wholly unreasonable to assume that the jury would have inferred that the box fell or toppled over without being pushed, in view of the opening statement to the jury by plaintiff's counsel that he intended to prove that the box "was pushed over on the child."

By reason of the above conclusion it is not necessary to discuss appellant's assertions that the court erred in concluding that plaintiff was a trespasser and that the box was not an attractive nuisance.

The judgment and order of nonsuit are affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied June 30, 1949, and appellant's petition for a hearing by the Supreme Court was denied July 28, 1949. Carter, J., voted for a hearing.